IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHAD FANT, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | No. 19-1769 |
| | : | |
| LOANDEPOT.COM d/b/a MORTGAGE MASTER | : : | |

### MEMORANDUM

**Juan R. Sánchez, C.J.**                                                                                                       **August 5, 2020**

Plaintiffs Chad Fant and Kalyse Fant allege Defendant Loandepot.com d/b/a Mortgage Master charged them a higher than agreed upon monthly payment on their loan and sent false information about them to credit reporting agencies. In their Amended Complaint, the Fants bring claims for violations of the Fair Credit Reporting Act (FCRA), breach of contract, fraud, and violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL). Loandepot moves to dismiss all four claims. The Court will dismiss the fraud and UTPCPL claims because the Fants have failed to plead justifiable reliance. The Court will deny the Motion with respect to the remaining claims because the Fants have adequately pleaded violations of the FCRA and breach of contract.

### BACKGROUND[1]

In July 2016, Loandepot lent the Fants $340,061. Under their loan agreement, the Fants had to pay Loandepot $2,309 a month. The Fants used their house as security for the loan, so the loan was structured as a mortgage. As part of the mortgage agreement, Loandepot was obligated to pay the property taxes on the Fants' house. Despite this agreement, Loandepot did not pay the Fants' property taxes in 2018. As a result, the Fants owed over $13,000 in unpaid taxes.

---

[1] In evaluating Loandepot's motion to dismiss, the Court takes the well-pleaded facts set forth in the Compliant as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

In August 2018, Loandepot began demanding the Fants pay $3,900 a month, even though this was almost $1,600 more than the Fants were obligated to pay. Around that time, Loandepot also declared the Fants' loan to be in default, even though the Fants had made all their required monthly payments. Loandepot then told credit reporting agencies the Fants had defaulted on their loan, and the credit reporting agencies reported this information. The Fants complained to both the credit agencies and Loandepot about the false information on their credit report. They also refused to pay the higher amount Loandepot requested. Instead, they continued to pay the agreed upon amount.

The Fants filed this case in April 2019. Loandepot moved to dismiss the Fants' original complaint and the Court granted that motion. In its order on that motion, the Court found the Fants failed to plead their FCRA claim and the Court declined to exercise jurisdiction over the Fants' remaining state law claims. The Court nonetheless gave the Fants an opportunity to file an amended complaint in which they could revise their FCRA claim and make any other revisions they deemed necessary in light of Loandepot's arguments in its motion to dismiss. The Fants then filed their Amended Complaint alleging violations of the FCRA, breach of contract, fraud, and violations of the UTPCPL. Loandepot now moves to dismiss the Fants' Amended Complaint.

**DISCUSSION**

The Court will grant Loandepot's motion in part because the Fants have not pleaded their fraud claim and their UTPCPL claim. The Court will therefore dismiss these claims. The Court will deny the motion with respect to the remaining claims.[2]

---

[2] Loandepot argues the Court should dismiss this case in its entirety because the Fants were late in filing their opposition to the motion to dismiss, but the Court declines to do so. The Third Circuit has explained that dismissing a case is a "drastic sanction[] that must be a sanction of last, not first, resort." *Hildebrand v. Allegheny Cty.*, 923 F.3d 128, 132 (3d Cir. 2019) (internal citations and quotation marks omitted). Here, the Fants filed their opposition three days after the Court-ordered deadline. This minimal delay does not merit the extreme sanction of dismissal.

A court must deny a motion to dismiss when, "accepting all the factual allegations as true and drawing every reasonable inference in favor of the [plaintiff]," the complaint alleges "a claim that is plausible on its face." *Owner Operator Indep. Drivers Ass'n, Inc. v. Pa. Tpk. Comm'n*, 934 F.3d 283, 290 n.7 (3d Cir. 2019). A complaint "does not need detailed factual allegations" if it contains something "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court will apply this standard to each of the Fants' claims in turn.

The Fants have stated a claim under the FCRA. Under the FCRA, claims by private parties against those who furnish information to credit reporting agencies are limited. 15 U.S.C. §§ 1681s-2(c) & (d). These claims can be brought only when the furnisher fails to conduct a proper investigation after being notified by the credit reporting agency that there is false information in a credit report. *Id.*; 15 U.S.C. §§ 1681s-2(b). Therefore, to bring a claim against a furnisher, a private plaintiff must allege he alerted a credit reporting agency to the false information in his credit report. *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 359 (3d Cir. 2011) ("[A] private citizen wishing to bring an action against a furnisher must first file a dispute with the consumer reporting agency.").

Here, the Fants have adequately alleged they complained to a credit reporting agency. Their Amended Complaint states:

> [I]n or around September 2018, Plaintiffs reached out to Equifax and other credit reporting agencies to attempt to resolve the issue [of the false report of default]. In additional [sic], Plaintiffs through their counsel, reached out to . . . the credit reporting agencies to complain about this incorrect and improper reporting. Plaintiffs attempted to have both Defendant and the credit reporting agencies investigate their claims, which efforts were futile. At each turn, Plaintiffs' concerns were either ignored, disregarded, or otherwise not disposed of or resolved.

Am. Compl. ¶¶ 17-20. At this stage, these allegations are enough to show the Fants complained to the credit reporting agencies and Loandepot failed to investigate the Fants' complaints as required by the FCRA. *See also* Am. Compl. ¶ 32 ("Plaintiffs reached out to Equifax and other credit

3

reporting agencies to dispute the alleged debt and to complain about same in an effort to force an investigation of the disputed credit reporting.").

Loandepot urges the Court to dismiss the FCRA claims because it never received any complaints from the credit agencies, but this argument relies on facts outside the Amended Complaint. Loandepot attached a letter to its motion in which it states it never received any complaints from credit agencies concerning the Fants. Br. in Supp. of Mot. to Dismiss, Ex. A. The Court cannot consider this letter at the motion to dismiss stage because the Court "must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Because Loandepot's letter does not fall into any of those categories, the Court cannot consider it. Therefore, after considering the allegations in the Amended Complaint in the light most favorable to the Fants, the Court concludes they have stated a claim under the FCRA.

The Fants have also stated a claim for breach of contract. To state a claim for breach of contract under Pennsylvania law, a plaintiff must allege "(1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages." *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016). The first and third elements—the terms of the contract and damages—are at issue here.

The Fants have adequately alleged the relevant terms of the mortgage agreement and loan agreement. They alleged the agreements required the Fants to pay $2,309 a month and they required Loandepot to pay the taxes on the Fants' house. See Am. Compl. ¶¶ 8, 10 ("Pursuant to the loan terms, Plaintiffs were required to make monthly payments to Defendant in the amount of $2,309.00, which amount covered the principal and interest due on the loan, as well as the taxes, as the parties agreed. . . . Pursuant to the loan documents, Plaintiffs' $2,309.00 monthly payments

4

to Defendant included funds for property taxes, which amounts the loan documents required Defendant to itself remit to the local taxing authority.") Loandepot allegedly breached the agreements by requesting more than the monthly amount and not paying the property taxes. The Fants therefore alleged the two contract terms relevant to Loandepot's breach. These allegations are thus sufficient to survive a motion to dismiss. *See CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999) (explaining that "not every term of a contract must be stated in complete detail" for a complaint to survive a motion to dismiss as long as "every element [of a breach of contract claim is] specifically pleaded").

The Fants have also alleged damages as a result of Loandepot's breach of contract. They alleged Loandepot did not pay their property taxes in 2018 "resulting in delinquent taxes in an amount exceeding $13,000.00, which amount continues to increase and incur additional interest, late fees, and other penalties." Am. Compl. 11. This allegation sets forth damages in the form of unpaid taxes, interest, late fees, and related penalties. Loandepot argues it paid the outstanding taxes on the Fants' house before the Fants filed this case. Once again, Loandepot relies on facts outside the Amended Complaint. Reading the Amended Complaint in the light most favorable to the Fants, the phrase "which amount continues to increase" implies Loandepot still has not paid the 2018 taxes, and the related interest, late fees, and penalties. Therefore, the Fants have adequately pleaded the unpaid taxes and related fees are damages resulting from Loandepot's breach.

Loandepot also incorrectly argues the Fants' breach of contract claim is barred by the doctrines of waiver and estoppel.[3] Considering only the facts in the Amended Complaint, neither of these doctrines are applicable here.

---

[3] Loandepot also mentioned the doctrine of ratification, but it did not include any argument or explanation as to how that doctrine would apply to this case. Typically, ratification is applicable when a contract is voidable and a party chooses to ratify the contract rather than exercise its

Waiver is not applicable because the Fants did not unequivocally waive Loandepot's alleged breaches. Under Pennsylvania law, "waiver requires a clear, unequivocal and decisive act" with the "evident purpose" of surrendering a contractual right. *Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 454 (3d Cir. 2018). There was no such clear and decisive act here. The Fants merely continued to make their required monthly payments to Loandepot. They did nothing to indicate that they no longer required Loandepot to pay their taxes or that they conceded to paying a higher monthly amount. For example, they did not begin paying the taxes themselves nor did they begin paying Loandepot a higher amount. In fact, they did the exact opposite: they complained to Loandepot about its breaches.

Estoppel is not applicable because the Fants did not make any promise to Loandepot which they refused to keep. "[E]quitable estoppel recognizes that an informal promise implied by one's words, deeds or representations which leads another to rely justifiably thereon to his own injury or detriment, may be enforced in equity." *Novelty Knitting Mills, Inc. v. Siskind*, 457 A.2d 502, 503 (Pa. 1983). There was no such promise here as the parties' relationship was governed by several contracts and no allegations in the Amended Complaint indicate the Fants made any promise outside of these contracts.

The Court next turns to the Fants' fraud and UTPCPL[4] claims, and finds those claims must be dismissed because the Fants have not alleged justifiable reliance. Under Pennsylvania law,

---

opportunity to avoid the contract. *See* Restatement (Second) of Contracts § 380 (defining ratification by affirmance); *see also Jakimas v. Hoffmann-La Roche, Inc.*, 485 F.3d 770, 782 (3d Cir. 2007), as amended (May 31, 2007) (applying federal law and noting "[t]he theory of ratification is that a promise can be enforced even though the underlying contract is voidable if it is ratified by the promisor"). Because there is no allegation in this case that the contract was voidable, the doctrine of ratification does not apply here.

[4] Count Three of the Fants' Amended Complaint is labeled "Violation of FCEUA [Fair Credit Extension Uniformity Act] and/or UTPCPL." Am. Compl. p. 6. The FCEUA can only be enforced through the UTPCPL. *See* 73 Pa. Stat. § 2270.5 (a violation of the FCEUA is a violation of the UTPCPL); *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 182 (3d Cir. 2015) ("The FCEUA

justifiable reliance is an element of both a fraud claim and a UTPCPL claim. *See Commc'ns Network Int'l, Ltd. v. Mullineaux*, 187 A.3d 951, 961 (Pa. Super. Ct. 2018) (listing justifiable reliance as one of the five elements necessary to allege fraud); *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438 (Pa. 2004) ("To bring a private cause of action under the UTPCPL, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance."). To demonstrate justifiable reliance, a plaintiff must show he "relied upon the statement or representation as an inducement to his action or injurious change of position." *Silverman v. Bell Sav. & Loan Ass'n*, 533 A.2d 110, 114 (Pa. Super. Ct. 1987); *see also Toy v. Metro. Life Ins. Co.*, 863 A.2d 1, 11 (Pa. Super. Ct. 2004), *aff'd*, 928 A.2d 186 (Pa. 2007) (quoting *Silverman* and applying this definition of justifiable reliance to a case involving the UTPCPL). In other words, a plaintiff must show he "act[ed] or refrain[ed] from action" because he relied on the defendant's fraudulent misrepresentation. *Silverman*, 533 A.2d at 114 (quoting the Restatement (Second) of Torts § 537).

The Fants cannot point to any action they took in reliance on Loandepot's misrepresentations. The basis of the Fants' fraud claims and UTPCPL claims are two categories of misrepresentations. First, they allege Loandepot misrepresented the amount the Fants had to pay each month because Loandepot demanded $3,900 a month when the Fants owed only $2,309 a month. Second, they allege Loandepot misrepresented the status of the Fants' loan because Loandepot declared the loan in default when the Fants had not defaulted. *See* Am. Compl. ¶ 55

---

therefore does not provide its own private cause of action; rather, it is enforced through the remedial provision of the UTPCPL."). Therefore, a plaintiff must allege the same elements to bring a claim under either statute. *See Kern v. Lehigh Valley Hosp., Inc.*, 108 A.3d 1281, 1290 (Pa. Super. Ct. 2015) ("The inclusion of a violation of the FCEUA as also being a violation of the UTPCPL, evinces a clear intent by our Legislature that FCEUA claims be treated in the same manner as other private action claims under the UTPCPL."). The Fants' FCEUA claim thus fails for the same reasons as their UTPCPL claim, and the Court need not analyze the FCEUA claim separately.

(alleging Loandepot committed fraud by "misrepresent[ing] the default status of the loan [and] the amount due thereunder"); *Id.* ¶ 50 (alleging Loandepot violated the UTPCPL by "falsely represent[ing] the character, amount, or legal status of the debt"). Despite alleging these misrepresentations, the Fants do not allege any action they took as a result. According to the Amended Complaint, the Fants continued to pay $2,309 a month, so they did not pay a higher fee as a result of Loandepot's misrepresentations. Am. Compl. ¶ 9 ("Throughout the life of the loan, Plaintiffs have made all payments as required . . . ."). Because the Fants did not act or refrain from acting in reliance on Loandepot's misrepresentations, the Court must dismiss their claims for fraud and violations of the UTPCPL.

**CONCLUSION**

The Court will grant Loandepot's motion to dismiss in part. The Court will not dismiss the Fants' claims for violations of the FCRA (Count One of the Amended Complaint) and for breach of contract (Count Two of the Amended Complaint). The Court will, however, dismiss the Fants' fraud claim (Count Four of the Amended Complaint) and UTPCPL claim (Count Three of the Amended Complaint) without leave to amend. The Court will not give the Fants leave to amend because the Fants already had an opportunity to amend their complaint, and they have not asked to amend it further. *See Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 210 (3d Cir. 2019) ("[D]istrict courts have no obligation to offer leave to amend before dismissing a complaint unless the plaintiff properly requests it." (internal citations omitted)); *see also Mullin v. Balicki*, 875 F.3d 140, 149 (3d Cir. 2017) (noting leave to amend can be denied if a plaintiff "fail[ed] to cure deficiencies by amendments previously allowed").

An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez

9

Juan R. Sánchez, C.J.